IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CONSTITUTION PARTY OF KANSAS,
CURT ENGELBRECHT, and MARK PICKENS,

                Plaintiffs,

vs.                                Case No. 10-4043-SAC

CRIS BIGGS, in his official capacity as
Secretary of State of Kansas,

                Defendant.

MEMORANDUM AND ORDER

This case comes before the court on the Plaintiffs' and Defendant's cross-motions for summary judgment.

**Summary Judgment Standard**

On summary judgment, the initial burden is with the movant to point out the portions of the record which show that the movant is entitled to judgment as a matter of law. *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992), *cert. denied*, 506 U.S. 1013 (1992); Fed.R.Civ.P. 56(c)(2).

In applying this standard, the court views the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the nonmoving party. *Adler v. WalMart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). This legal standard remains the same here, where the court is ruling on cross-motions for summary judgment, since each party still

has the burden to establish the lack of a genuine issue of material fact and its entitlement to judgment as a matter of law. *See City of Shawnee, Kan. v. Argonaut Ins. Co.*, 546 F.Supp.2d 1163, 1172 (D.Kan. 2008). "Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979). To the extent the cross-motions overlap, however, the court addresses the legal arguments together.

**Facts**

The parties stipulate to the relevant facts. The Kansas Constitution Party ("Constitution Party") is officially recognized by the state of Kansas as a political action committee but not as an officially recognized political party. The Constitution Party is a political affiliation of like-minded individuals who actively promote their political views and support chosen candidates for state and national elected offices in the state of Kansas.

Curt Engelbrecht ("Engelbrecht") is a member and treasurer of the Constitution Party and its political action committee.  He is also the primary Kansas contact person for the national Constitution Party, a Kansas resident, and a registered Kansas voter.  Plaintiffs sue the Kansas Secretary of State, Chris Biggs, in his official capacity ("the Secretary").

When a Kansas resident registers to vote, the State allows the voter to declare affiliation with any "recognized political party" or "registered political organization". KAN. STAT. ANN. § 25-3306 (2010). Regardless of political

2

affiliation, voters must either select an affiliation with a listed recognized political party or registered political organization, or select "not affiliated with a party" on the voter registration form.  There are currently four recognized political parties in Kansas: Democratic, Republican, Libertarian, and Reform.  If the voter does not declare affiliation with a recognized political party or registered political organization then the voter is listed as "unaffiliated" by default. KAN. STAT. ANN. § 25-2309(19).

The Secretary of State "may adopt rules and regulations prescribing the method of listing members of all registered political organizations in voter registration and affiliation."  KAN. STAT. ANN. § 25-3307(b).  The Secretary also has the duty to confer recognized political party status on parties that meet the statutory requirements.  The Constitution Party has not met the statutory requirements for either a recognized political party or a registered political organization under KAN. STAT. ANN. § 25-3307(a).  Accordingly, when a member of the Constitution Party registers to vote, he or she is reflected as "not affiliated with a party."

Kansas law requires that to become a recognized political party, the party must file "petitions signed by qualified electors equal in number to at least 2% of the total vote cast for all candidates for the office of governor in the state in the last preceding general election." KAN. STAT. ANN. § 25-302a.  A recognized political party will lose its recognized status if the party's "nominee for any office for which the officer is elected from the state as a

3

whole fails to receive at least 1% of the total vote cast for any such office in this state at any general election," or if the party "fails to nominate persons for at least one such office." KAN. STAT. ANN. § 25-302b.

Kansas law also permits voters to declare affiliation with a registered political organization. There are three requirements for an organization to be qualified as a registered political organization. *See* KAN. STAT. ANN. § 25-3307(a). An organization must file a statement of organization with the Secretary of State, must file a certified List of officers with the Secretary of State, and though the organization is not required to hold recognized party status at the time of filing, it must have held recognized political party status under KAN. STAT. ANN. § 25-302a at some time in the past. *Id.*

The Secretary tracks voter registration information on a computerized system and provides a party affiliation list to each recognized political party. *See* KAN. STAT. ANN. § 25-3304(a). The list contains certain contact information for voters who selected that particular party on their voter registration form.  *Id.*

Party affiliation lists and voter registration records may be used for political campaign and election purposes. *See* KAN. STAT. ANN. § 25-2320(a). The Constitution Party and Engelbrecht seek to use party affiliation lists to contact and associate with members and supporters for political campaign or election purposes, but cannot because the Secretary does not record voter affiliation with the Constitution Party. Engelbrecht, as a registered Kansas

4

voter, cannot express his affiliation with the Constitution Party on the voter registration application or have his party affiliation tracked by the Secretary.

Constitution Party supporters have run under other party tickets because the Constitution Party is not officially recognized in Kansas. For example, Susan Ducey, a Constitution Party supporter and a candidate for Congress in Kansas' Fourth Congressional District, ran as a candidate for the Kansas Reformed Party because the Constitution Party is not a recognized political party in Kansas.

**Discussion**

Plaintiffs seek declaratory relief that the Secretary's failure to track the party affiliation of voters who wish to affiliate with the Constitution Party, an unrecognized political party, violates the plaintiffs' First Amendment right to speech and right to associate, and their Fourteenth Amendment equal protection rights.

The formation of political parties and the right to vote implicates the First and Fourteenth Amendments' right to form an organization to facilitate political speech, and an individual's right to associate with that organization. *See Kusper v. Pontikes,* 414 U.S. 51, 56-57 (1973); *see also Green Party of the State of N.Y. v. Weiner*, 216 F.Supp.2d 176, 186 (S.D.N.Y. 2002). First Amendment freedom of speech and association claims usually involve a separate analysis from equal protection claims. However, where, as here, a challenged election law burdens minor political parties, these separate claims

tend to coalesce. "A burden that falls unequally on new or small political parties . . . impinges, by its very nature, on associational choices protected by the First Amendment." *Anderson v. Celebreeze*, 460 U.S. 780, 793 (1983). *See also Green Party*, 216 F.Supp.2d at 189 (noting that "neat distinctions" between First Amendment and Equal Protection challenges to state election laws that burden the rights of minor parties are "difficult" and perhaps "irrelevant" because "the ultimate analysis" requires the state to pass both tests.) This same burden, placed specifically on minority political parties, necessarily raises an equal protection concern. *Green Party*, 216 F.Supp.2d at 188-189. Therefore, "[w]hether particular claims are characterized as equal protection claims with a First Amendment component or as First Amendment claims with an equal protection component does not alter the ultimate analysis required to resolve such claims." *Id.* at 189.

Plaintiffs argue for the use of strict scrutiny analysis.[1] But the Tenth Circuit has rejected the use of strict scrutiny review in cases related to elections. *Rainbow Coalition v. Oklahoma State Election Board*, 844 F.2d 740, 742-43 (10th Cir. 1988). *See also Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (using the standards set forth in *Anderson* and reaffirming that

---

[1]The Supreme Court has not been consistent in articulating the test applied to cases challenging state regulations of the voting process. *See, e.g., Munro v. Socialist Workers Party*, 479 U.S. 189 (1986); *Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Illinois State Bd. Of Elections v. Socialist Workers Party*, 440 U.S. 173 (1979).

"to subject every voting regulation to strict scrutiny and to require that the regulation be narrowly tailored to advance a compelling state interest … would tie the hands of States seeking to assure that elections are operated equitably and efficiently.")

The Court finds that the correct test for this particular challenge is the balancing test set out in the Supreme Court's decision of *Anderson v. Celebreeze*. *See Rainbow Coalition*, 844 F.2d at 743; *Baer v. Meyer*, 728 F.2d 471, 474 (10th Cir. 1984); *Blomquist v. Thomson*, 739 F.2d 525, 527 (10th Cir. 1984). This test, which is essentially the same for each of plaintiffs' claims, weighs the severity of the burdens placed on the asserted rights by the challenged provisions, then evaluates the interests of the state in the challenged provisions.

> [The court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate.  It then must identify and evaluate the precise interests put forward by the State as justification for the burden imposed by its rule.  In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests , it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights.  Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Rainbow Coalition*, 844 F.2d at 743 (quoting *Anderson*, 460 U.S. at 789). Although there may be similarities between this test and intermediate scrutiny, the Court will use the Supreme Court's flexible balancing approach from *Anderson*, rather than using strict, intermediate, or rational-basis

scrutiny.

Accordingly, the court first considers the interests articulated by the plaintiffs. Plaintiffs argue that the state hinders the marketplace of ideas by compiling information about only the major political party members and is therefore subsidizing major political parties over minority parties. The court recognizes that our government is built upon the process of voting. Voting is the most precious right of an individual and the "life blood of representative government." *Baer*, 728 F.2d at 473; *also see Westberry v. Sanders*, 376 U.S. 1, 17 (1964). "By limiting the opportunities of independent-minded voters to associate in the electoral arena to enhance their political effectiveness as a group, such restrictions threaten to reduce diversity and competition in the marketplace of ideas." *Anderson*, 640 U.S. at 794. It is important to create a marketplace of ideas which allows the expression of ideas that differ from those of the two main political parties.

Plaintiffs argue that by supplying recognized political parties with the invaluable resources of party affiliation lists, the Constitutional rights of unrecognized parties and their members are severely burdened. A political party's ability to communicate with all possible party members is a valuable resource in facilitating the party's organization of campaigns, enlisting party workers, and in fund raising efforts. *See Atherton v. Ward*, 22 F.Supp.2d 1265, 1268 (W.D. Okla. 1998). Recognized political parties receive a list of all voters who have identified themselves as part of that recognized political

8

party on their voter registration forms. Any member of the Constitution Party is listed as "unaffiliated" and therefore is not distinguishable from other "unaffiliated" but non-Constitution Party members. Accordingly, a list of contact information for all voters listed as "unaffiliated" is useless to unrecognized parties for the above-stated purposes. Plaintiffs thus articulate legitimate and important interests which are burdened by the State.

The court next considers the interests asserted by the state. Although an individual's voting rights are of utmost importance, the Secretary first notes its corresponding obligation to regulate the voting process, including voter registration. The law is well-settled that a state has the power to engage in "substantial regulation of elections … if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730 (1974). Thus some substantial regulation of elections is necessary to ensure that elections are fair, honest, and orderly. *Id,* 415 U.S. at 730.

Second, the Secretary, as the facilitator of the election process, has the duty to avoid voter confusion, deception, and other possible frustrations of the democratic process. *See Munro v. Socialist Workers Party*, 479 U.S. 189, 194 (1986). Adding party names of recognized and non-recognized political parties to the voter registration card may increase voter confusion. Plaintiffs suggest that the Secretary could easily add an "Other" box followed by a line on the voter registration forms, so that Constitution Party members

could write in "Constitution Party," but the Secretary counters that requiring election workers to decipher handwriting or abbreviations for political parties is problematic. Plaintiffs downplay the difficulty of interpreting handwriting and abbreviations by citing an Oklahoma District Court's confidence in the election board members that they would have relatively few problems and could create a method to overcome any difficulties. *See Atherton*, 22 F.Supp.2d at 1269. This court does not share the Oklahoma court's confidence.

The state has a legitimate interest in avoiding voter confusion, deception, or other election process frustrations without presenting empirical evidence that the contested measure in fact reduces those risks. *See Storer*, 415 U.S. at 736. The court finds that leaving a blank line without limitations on what could be written presents the possibility of voter confusion, therefore the State presents an understandable, though not insurmountable, concern for the clarity of voter registration.

Further, the addition of unrecognized parties or an "Other" line to the voter registration cards and tracking software imposes an administrative burden on the state. In *Rainbow Coalition*, minority parties challenged Oklahoma's voter registration law allowing voters to declare association with only the recognized political parties listed. 844 F.2d at 747. The Tenth Circuit found the administrative burden associated with changing voter registration cards and the increased work required with tracking more party information,

to be substantial because at the time only three Oklahoma counties had computerized voter registration systems.  *Id.*

Ten years later, in another challenge to Oklahoma's voter registration system, an Oklahoma district court found the state's administrative burdens associated with changing the registration forms insignificant in light of the state's then updated computerized voter registration systems.  *Atherton*, 22 F.Supp.2d at 1268. The court acknowledges that making any change in the Kansas voter registration card undoubtedly produces some administrative burdens on the state, in producing new cards, distributing them throughout the state, educating voters and election workers about them, and funding such changes. With Kansas' statewide computerized registration system, however, adding one more party to the forms may seem to be an insignificant burden. The separate burden, however, of interpreting handwritten notations and properly categorizing them can be substantial. Additionally, if this were done for the Constitution Party, it would likely have to be done for numerous other parties, as well.

Voter confusion and administrative burdens must be considered together with the state's third interest: controlling frivolous party registration of tiny fractional interests. *See Rainbow Coalition*, 844 F.2d at 747; *Baer*, 728 F.2d at 475. "It is settled beyond hope of contradiction that states have a legitimate interest in ensuring that a candidate makes a preliminary showing of a substantial measure of support as a prerequisite to

11

appearing on the ballot." *Barr v. Galvin*, 626 F.3d 99, 111 (1st Cir. 2010). *See e.g.*, *Jenness v. Fortson*, 403 U.S. 431 (1971) (rejecting a challenge to Georgia's election statutes that required independent candidates and minor-party candidates, in order to be listed on the general election ballot, to submit petitions signed by at least 5% of the voters eligible to vote in the last election for the office in question); *American Party of Texas v. White*, 415 U.S. 767 (1974) (rejecting a First Amendment challenge to a 1% requirement, finding the State's interest in preserving the integrity of the electoral process and in regulating the number of candidates on the ballot to be compelling); *Anderson v. Celebrezze*, 460 U.S. at 788-789. This 'support' requirement is meant "to safeguard the integrity of elections by avoiding overloaded ballots and frivolous candidacies, which diminish victory margins, contribute to the cost of conducting elections, confuse and frustrate voters, increase the need for burdensome runoffs, and may ultimately discourage voter participation in the electoral process." *Libertarian Party of Maine v. Diamond*, 992 F.2d 365, 371 (1st Cir. 1993). Similarly, the state of Kansas has a legitimate interest in ensuring that a political group makes a preliminary showing of a substantial measure of support as a prerequisite to appearing on the voter registration forms.[2]

To protect this significant state interest in Kansas, the Secretary

---

[2]It is foreseeable that if voter registration forms are changed by listing additional political parties, a corresponding change in the ballots will follow.

requires a showing of a modicum of support from a political party, as stated in the Kansas statutes, before a party can be listed on the voter registration form. In this case, the state argues that if a political party cannot reach the very low statutory requirements for becoming a recognized political party in Kansas,[3] then the party cannot show a modicum of support and represents a mere fractional interest. The Constitution Party argues it has shown a modicum of support by becoming an officially recognized political action committee, having a defined organization with officers and dues-paying members, being associated with the national Constitution Party which has fielded presidential candidates in five presidential elections, and by fielding Kansas Constitution Party supporters on the ballot in Kansas elections, although under other party tickets.

Neither the United States Supreme Court nor the Tenth Circuit has given specific criteria for determining whether an organization has a modicum of support. The plaintiffs contend that the Tenth Circuit in *Baer v. Meyer* held that the failure to track affiliation with unrecognized parties places impermissible burdens on the unrecognized parties. This is not completely accurate. The court in *Baer* did hold that the state of Colorado must allow voters to designate their support on registration forms and

---

[3] *See* KAN. STAT. ANN. §§ 25-302a, 25-302b, 25-3307(a). Kansas requires at least signatures equal to 2% of the total number of votes in the last general election, while Oklahoma requires at least 5%.

13

provide voter contact information to the plaintiff parties - the Citizen Party and the Libertarian Party - despite the parties' inability to meet Colorado's statutory definition of a recognized political party. *Baer*, 728 F.2d at 476. But that holding was grounded in state law different than in Kansas, and the court carefully limited the decision to apply to only "political organizations," as defined by state law, which had demonstrated a modicum of political support. *Id.*

The court finds cases from Colorado, Oklahoma, and Iowa to be instructive. Colorado's definition of a modicum of political support is rooted in the Colorado state law defining a "political organization" as a group that "places upon the official general election ballot nominees for public office." COLO. REV. STAT. § 1-1-104(17) (1980). Both the Citizen Party and the Libertarian Party fulfilled this requirement and were recognized political organizations in Colorado. *See Baer*, 728 F.2d at 472, 476. Because the parties were able to fulfill the Colorado statutory definition of a political organization, the court determined they had a modicum of support and did not represent only a fractional interest in Colorado; therefore, they had the right to be listed on the voter registration cards and tracked by the state. *Id.* at 476. Here, of course, the Constitution Party is neither a registered political party nor a registered political organization.

Oklahoma uses the state's political party recognition requirements to determine a modicum of support. In Oklahoma, a political party shows it

14

does not represent only a fractional interest either by completing the process of becoming a recognized political party, or by having qualified as a recognized political party in the past.[4] *See Atherton*, 22 F.Supp.2d at 1266. To receive recognized political party status, a political body was required to "file petitions with the Board bearing the signatures of registered voters equal to at least five percent (5%) of the total votes cast in the last General Election either for Governor or for electors for President and Vice President." *Rainbow Coalition*, 844 F.2d at 741 (internal quotations omitted) (quoting Okla. Stat. tit. 26 § 1-108 (1981 & Supp. 1987). When a party was unable to meet the 5% signature standard, the Tenth Circuit found the 5 % percent requirement was "undeniably constitutional," 844 F.2d at 744, concluding, "the state has not unnecessarily infringed upon the associational rights of the voter and his party by restricting party designation to those parties that have shown the modicum of support necessary to receive recognized [party] status." *Rainbow Coalition*, 844 F.2d at 747.

Iowa's voter registration statutes similarly require the state to track only recognized political party status, *i.e.*, parties who have filed a petition with signatures at least equal to 2% of the total votes cast in the last

---

[4] In Oklahoma, a recognized political party can loose its recognized status if "its nominee for Governor or its nominees for electors for President and Vice President fail to receive at least ten percent of the total votes case in any general election." *Rainbow Coalition*, 844 F.2d at 742. When a party loses recognized status, all voters registered under that party name are automatically changed to "Independent." *Id.*

15

general election for governor or president. *See Iowa Socialist Party v. Nelson*, 909 F.2d 1175, 1176 (8th Cir. 1990). In *Nelson*, the Iowa Socialist Party fielded candidates for state governor and President,[5] but could not satisfy the 2% requirement to become a recognized political party. *Id.* at 1177. Because of the party's failure to meet that requirement, the Eighth Circuit Court of Appeals held that the Iowa Socialist Party was a fractional interest that did not show a modicum of support. *Id.* at 1180-81.

Kansas, like Colorado, Oklahoma, and Iowa, properly relies on the state statutes to define when a political party or organization shows a modicum of support. The Kansas requirements for becoming a recognized political party or registered political organization closely resemble the Oklahoma and Iowa statutory requirements. The statutory standard is reasonably low in its percentage requirements; its requirements are capable of being objectively measured; its result can be determined with certainty; and its method is not easily susceptible to fraud or deception. The Constitution Party argues for a more privatized standard that is more easily manipulable, less objectively measured, and which could produce a political status that frequently.

The state of Kansas has a substantial and heavy burden to control

---

[5] The Iowa Socialist Party's candidate for President only received 0.03% of all votes cast in Iowa. *See Nelson*, 909 F.2d at 1177.

fractionalism. The Court finds that the statutory requirements for recognition as a registered political party or organization in Kansas are unquestionably constitutional in requiring the stated modicum of support, and precluding fractional interests.

Unrecognized political parties representing minority views are vital to the continuation of a representative government, but this must be balanced with the State's important interests in controlling fractionalism, avoiding voter confusion, and reducing the burden of additional administrative costs. Kansas, by its statutes, has established a reasonable threshold for an organization to become a recognized political party or organization. When the court balances the interests of the parties here, it finds that the state has not unnecessarily infringed upon the speech, association or equal protection rights of the plaintiffs by restricting party affiliation on voter registration forms to those parties that are either recognized political parties or registered political organizations, as defined in Kansas statutes.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment (Dk. 23) is denied and that defendant's motion for summary judgment (Dk. 21) is granted.

Dated this 27th day of April, 2011.


                                    s/ Sam A. Crow
                                    Sam A. Crow, U.S. District Senior Judge